Katherine Rothkamm v. United States of America John McDermott v. Michael Walsh v. Katherine Rothkamm May it please the Court, the IRS confiscated Ms. Rothkamm's property. In excess of $73,000 was taken from her bank account, Iberia Bank in Baton Rouge, without notice to her, in payment of a tax that was not owed by her. The tax was not assessed against her. It was assessed against her now estranged husband, Jamie Rothkamm, and it was due to employment payroll taxes assessed against Mr. Rothkamm with respect to his practice of law, and also with respect to individual income tax assessed solely against Mr. Rothkamm. Mr. and Ms. Rothkamm had a separate property agreement, and they always filed separate tax returns, and Ms. Rothkamm wants her opportunity to district court to show that this was her separate property wrongfully seized, and that brings us here today. Ms. Rothkamm filed a petition pursuant to Internal Revenue Code Section 7426, which was a grant of jurisdiction and waiver of sovereign immunity for her suit against the government. The government filed an exception for a lack of jurisdiction that was granted by the U.S. District Court, and Ms. Rothkamm has appealed. The issues of this case boil down to the application of Internal Revenue Code Section 7811 to Ms. Rothkamm. She relies on that statute and the suspension of the periods of limitation provided in 7811, and she also relies on that statute because she and the District Court has agreed that 7811 was not available to Ms. Rothkamm and that 7811D did not suspend the period of limitations, and we respectfully disagree. First, she is a taxpayer. If you would just take the common definition of the term, look at the compound word taxpayer would certainly imply a person who pays a tax. Ms. Rothkamm's property was to pay a tax, but in the Internal Revenue Code, everything is a defined term, as is taxpayer, and that term is defined in 7701A14. Statutory definition of taxpayer means any person subject to . . . Speaking as one judge, I mean, I think you prevail on that issue. I think she was a taxpayer. That's my view. But the problem that I have is the statute of limitations, and it doesn't seem to me that the statute of limitations saves her claim that it was not told during this period in which the tax assistance petition was penned. Do you want to address that? Yes. Well, I'll go directly to that. 7811D specifically says or provides that the running of any period of limitation with respect to any action described in subsection 2B shall be suspended. And we take a look at section 2B of 7811 . . . Let me tell you the way I read and you can respond to it, is it says that any action described in subsection B . . . So then you ask what action is described in subsection B, and the action described in subsection B is an order directing the secretary to release the property levied upon. In other words, the action is an order. There was no order ever issued in this case. So how do you overcome the fact that there was no order specifically to which the statute requires? Well, Your Honor, we look at 7811B and B1 says specifically to release any property the taxpayer levied upon. But there was no order. And that is an action. No. The release of property levied upon. And if we take that specific language and insert it into 7811D, 7811D ends up reading the running of any period of limitation with respect to any action to release property the taxpayer levied upon shall be suspended. And that is what Ms. Roth can't rely upon. And any period of limitation and any action are all inclusive terms. And in the actions described in B2 includes release of property levied upon. And the action filing a petition under 7426 is a petition to release an opportunity for an administrative appeal. But as I look at the statutory framework, a taxpayer gets its taxpayer assistance with perhaps the appointment of an ombudsman for an early intervention on a levy that may be in error, et cetera. So the taxpayer is slowing the process down. That does, the taxpayer does not, by getting that taxpayer assistance, extend the time in which they can sue the government for wrongful levy. But what it does is, but it does operate to total limitations of which the government can proceed itself. Now, that's the way one could read that structure. Well, that is the way the district court and the government is certainly reading it. But the taxpayer is reading it and did read it at the time that it meant any period with respect to any action. Do you have cases that hold that? Sir? Do you have any cases that hold that? There's no cases that hold either way on that. There have been no cases that dealt with an application by a taxpayer for relief under this section, right? There is not a case that I have found. The one that the government cites, which is distinguishable here, is, I believe you would pronounce it Demes, D-E-M-E-S, and it's cited in government's brief and in mine. But it was a court of claims case, decision. And the facts under that, it did specifically say in that case that 7811D did not hold statute of limitations, but the facts in that case are completely different from what we have here. If you look in the Demes case, the plaintiff filed their petition long after all periods of limitation had already run and expired. And so the court then saying you can't use 7811 to toll the statute of limitations certainly would be reasonable and correct in that The action that you say is tolled is under 7426. That is one of them, yes. The filing of a petition by the taxpayer is an action to release property levied upon. And then under 6343 is the opportunity to file an application with the IRS for administrative review. And she did both of those. Ms. Rothkam pursued all administrative remedies, and she was relying on the suspension of the period of limitations under 7811 to make each of these filings timely. Now, I believe that if we read strictly the words of 7811D and B2, that it would say that we suspend any period of limitation with respect to any action to release property levied upon. But also in a very recent case, Supreme Court case of King v. Burwell, just announced, in that the Supreme Court said you give great deference to the clear words of the statute. Sometimes. Sometimes. There's more to it. But you give great deference to the wording of the statute. And doing that, I think we've already argued that a strict reading of the statute would provide for the suspension of the running of limitations for Ms. Rothkam. But if you also look at the statutory scheme and the objective of 7811, it's to provide relief to the taxpayer when they're about to suffer significant harm by the manner in which the IRS is administering the tax rules. And in this case, when the IRS wrongfully seizes property to pay tax of a person other than the one who seized property, property was seized, that is great harm. And so the taxpayer advocate, being able to make application to the taxpayer advocate, is a quick and expedient, efficient method for Ms. Rothkam or other taxpayers in her situation to get relief before they have to incur substantial professional fees, which is one of the statutory examples of significant harm. You know, the statute of limitations on 7426, that's really a short fuse. You've got nine months, don't you? You have nine months. And I don't know, just to me, it's hard to see how this would give very much relief if you only had nine months to work with them. I mean, are you going to have this application with the tax advocate, and then if they don't, you've got to file your suit before they rule on it? It seems like the suspension period, which says it's suspended until there's a decision by the tax advocate, indicates to the contrary to me. I mean, I'm agreeing with you. I agree with you. I mean, I agree. Equity is on your side. I mean, I agree with that. I mean, what would be the purpose of this section if you couldn't have a meaningful claim for relief here? That's the point of the taxpayer in this case, Mrs. Rothkamp. That goes really to the question of what taxpayer relief is intended to afford. My understanding of the source of that provision by the Congress is to deal with a situation of wrongful levies, which are not uncommon, and ministerial mistakes are made, wrong property, things that are easily correctable, and you have the taxpayer, Oz Boozman, they can stop that very quickly and go from there. It's not to affect a determination of the merits or the complicated merits at all. So, I mean, I think that I agree with Judge Davis about a policy up to a point, but it also assumes that the Taxpayer Assistance Program is designed to do anything other than to allow early, quick intervention to correct simple ministerial error. Maybe that's part of the counterargument. Well, it does that, and in Ms. Rothkamp's case, the taxpayer advocate, or what it was hoped, was that the taxpayer advocate could have issued an order to release the property. That would have accomplished Ms. Rothkamp's objective. It wouldn't then, of course, the government could have then attempted to seize it under proper methods, but she would have at least had the opportunity then to present the facts of her case and show that it was her separate property before she got involved with administrative procedures and with having to file a petition in court. Or the taxpayer advocate could have simply issued an order to the IRS to look at this case again, or could have ordered the IRS to review this at a higher level. Any of these opportunities could have afforded significant relief to Ms. Rothkamp, and during that period of time, while her case is pending with the taxpayer advocate, the statute says that all periods of limitations are suspended. But look at it this way. With the Congress provided, you've got nine months to complain that it's not about somebody that's living on your property that shouldn't be living on. And that's what it is, nine months. And if that's long enough, that's what the judgment is made, is how much time you've got. And what we're talking about now is that, well, you ought to get longer than that if you get taxpayer assistance. If you don't, you don't really get taxpayer assistance effectively. And, of course, that begs the question of what the structure is. The structure is a quick intervention and so forth, and you've still got nine months to, I mean. She did not know that she was going to have to file a lawsuit when the nine months expired. She was hoping to avoid the expense of attorneys to fight a wrongful levy. And it's clear from the statute that if the tax advocate had rendered a decision favorable to her, that would be binding on the IRS. I mean, that would be, unless they took an appeal, that's the end of it. She's won, right? It wouldn't be finally dispositive of the issue, but it would. The IRS is required to observe her order. It is a lady who is the national taxpayer advocate. That's why I say her. I mean, as I read it, it says unless there's an appeal, that resolves the issue. Isn't that right? I mean, is there some other procedure? The IRS would then have to take some other action with respect to her property. All right. Thank you, Your Honor. Okay. And thank you, Mr. McFarland. Mr. Schuman, Department of Justice. Good morning. My name is John Schuman, and I represent the United States. Plaintiff Catherine Rothkamp filed her wrongful levy suit too late, and now she seeks to stack one tolling provision on top of another in an effort to excuse her target. How late was she? Pardon? How late was she? Well, the time ran out in December of 2012 because that was nine months after the notice of levy was served in March of 2012. I know, but when did she file? Pardon?  Well, she didn't file her lawsuit until September of 2013. How much time lapsed between the nine months and the time she filed? From December of 2012 to September of 2013 would have been about nine months. So she was about nine months too late. If the application she filed with the tax advocate suspended the running of the statute, she was timing. Is that right? Yes, Your Honor. Yes, that's what she's attempting to do is to stack those two tolling provisions together. While we're talking about 7811, let's go to that issue. I mean, let me just tell you the way I read it. A-1 to make it clear to me anyway that the purpose of that statute is to give the taxpayer an avenue for relief if they can show that they're under whatever it is, significant hardship as a result of the manner in which the IRS treated them. So I take that as the general purpose of 7811 in setting up the tax advocate. Do you agree with that? Yes, Your Honor, that's it. And then we go to B. It talks about the terms of a taxpayer assistance order, which ties into D. And B says the terms of a taxpayer order may require the secretary within a specified time. And B-1 is critical to me. It says to release property of the taxpayer levied upon. Now, to me, an application to do that can only apply to the taxpayer. It can't apply to suspend something the government or the IRS would want to do. Do you agree with that? No, Your Honor. I respectfully don't. The action there that's referred to is the action by the taxpayer advocate in ordering the secretary to release the property. So the action is the order, or you could say maybe the action is the secretary releasing the property. But in any case, the action is not an action by the taxpayer to sue in federal court under 7426 in a wrongful levy action. But, I mean, doesn't that mean, though, that this is one of the things the taxpayer can ask for is to have his property released? Your Honor, he can. She, in this case, she can seek the release or the return of property. All right. So if that's something she can do, then why wouldn't you, when you read D, which it says the running of any period of limitation with respect to any action described in B shall be suspended, why wouldn't that include the action of a taxpayer asking to get his property returned? Because it is the action in question is the action by the taxpayer advocate or maybe the action by the secretary in releasing the property. And if we step back a moment and look at the terms of this taxpayer assistance order, this type of order is ordering the government to do something or to refrain from doing something. It's not ordering the taxpayer to do anything. They're not going to tell her, no, you can't file this wrongful levy action. So there's no need for a tolling provision there as to her action. The only requirement for a tolling here, the only reason for a tolling here, is to allow the government to forbear. So it doesn't have to go after a while this application is pending. Because if you look at all the rest of the statute, that's what it is. It talks about all these different categories of actions by the government. Many of them relate to the limitations period for the government to collect a tax. There's a ten-year limitations period for that after assessment. And then there's a limitations period on the government to assess the tax. You have to assess the tax within three years after the return is filed generally. I mean there's exceptions to all these things. But D says the running of any period of limitation with respect to any action. And then I go look at B, and the only way the taxpayer is going to get his property released is to ask for it. And so he goes to the advocate and says, you know, this is a substantial hardship to me. I want my property released. And then you go to D and it says suspend any period of limitation with respect to any action. I mean why isn't that an action? Well, it does say, you know, any period of any action. There's a couple of anys in there. But it also says any action described in Section B. Now in Section B it's talking about actions by the taxpayer advocate. See, I mean it doesn't use the word action in B.1. But do you have to use the word action in order to imply that the taxpayer has filed an application for relief, that it's authorized under B? I mean why isn't that an action? Well, Your Honor, that's a great point. The word action doesn't even exist in B.1. It just says to release the property the taxpayer elected upon. It doesn't say the word action. In B.2 it does say action. Well, I mean the whole purpose of this section is to give the taxpayer some relief. So he comes in and asks for relief. He says release my property. I mean do you have to actually insert the word action in there to consider that an action? Well, Your Honor, it would certainly make more sense if it did. And I think it's really useful here to look at the tolling provision that does actually apply here, 6532C, because when Congress wants to put a tolling provision on this nine-month period, they know how to do it. Section 7426, the wrongful levy statute, and 6532, the tolling provision, they were enacted at the same time in 1966, and they expressly reference one another. There is no other tolling provision in the code that mentions 7426, the wrongful levy statute. So it's crystal clear that that tolling provision applies. This is a novel creation that no court has ever ---- As far as I know, we didn't find a case on it where a taxpayer has claimed suspension. So I don't think there's a case on the books about it, at least as far as we can find. We're not aware of a third-party claimant here who has relied on this before. But, of course, if you interpret it the way that you are reading the statute, what you're doing is giving the government a benefit that you're denying the taxpayer. The government has the right to have the statute of limitations extended to it in order to accomplish whatever kind of order the taxpayer assistance issues. Is that right? Well, not exactly. I don't know how that works. How does this ---- Give me an example of when this statute is applicable from your point of interpretation. The 7811 tolling provision? Well, it does toll the time in which the government can operate. That's absolutely correct. I think that there is a differential treatment. But the point about that is that the delay in collection is being affected by the taxpayer's implication of this process for quick intervention, et cetera. And basically the Congress has said, I read this, that you can't, the taxpayer, you can't tie the government up with this other process and procedure when its limitations are running against it. In other words, you can't hold it over here with your left hand and the various stages that the government has to meet along the way, and the implementation period continues to run. I understand what Judge Higginbotham is saying. The government gives with the left hand and takes away with the right. Yes. Well, that doesn't sound like a very kind of square deal to me. Well, it gives to the taxpayer an opportunity to proceed with this. At the same time, it evens it up. At the same time, it tells the government, as much time as they use over here, you get over on the other side to go forward with your collection procedure. That's the way the structure, right or wrong, fair or unfair. Well, see, the way I read it, in A and B-1. You want to just sit down? You know, B-1 applies to action by the taxpayer, and then B-2A particularly, maybe some of the others, but B-2A relates to actions by the government, and it definitely does toll actions by the government, but I don't see why that means that you don't also toll the action taken by the taxpayer in B-1. It says tolls any action. Well, Your Honor, we're talking about this as if we're writing on a blank slate, and we're really not because the IRS has interpreted 7811 in a manner supporting the government's position here in its regulations. We didn't make up this position just in this litigation. These regulations have been on the books for almost as long as the statute, and these regulations are valid under Chevron. Now, Ms. Rothkam does make a very brief attempt to try to challenge these regulations, but the regulations are valid. The regulations say that a taxpayer's right to administrative or judicial review will not be diminished or expanded in any way as a result of the taxpayer seeking assistance from the taxpayer advocate. That means that a taxpayer's right to sue is not affected in any way, so periods of limitation are not affected. Tolling is not affected. That's what the IRS has said in its properly promulgated regulations. So the question here under Chevron is has Congress addressed this precise issue at hand? Is it crystal clear? If it is, okay, but if it's not, then you have to go to the second step of Chevron, and Rothkam must then show that the IRS regulations are arbitrary and capricious and manifestly contrary to the statute. That's a heavy burden, and she barely even attempts to carry it. Her primary challenge to the regulations is that the IRS was not authorized to promulgate them, but she ignores the rulemaking authority in Section 7805A. You see, I mean, they don't address the tolling provision, though, specifically, and does that just mean that the IRS has, you know, they can, as counsel said, they can take further action to enforce their position. This is not the end of the road. I don't know that that's not what that regulation means. Well, the regulations also say that this taxpayer advocate. . . Read the explicit provision that addresses it. Pardon? Read the explicit provision of the code. The explicit provision in the regulation? It deals with it. It addresses the question of limitations. I mean, have you got one dealing with the tolling provisions in the statute? No, there's one that's broader than that. It includes limitations. It includes tolling. It says the taxpayer's right to sue is not affected in any way. Read what it says. No character. Just read it, that particular provision, the language. Sure, and from the regulations. Yes, Your Honor, it says, among other things, the national taxpayer advocate may not make a substantive determination of any tax liability. A taxpayer assistance order is also not intended to be a substitute for an established administrative or judicial review procedure, but rather is intended to supplement existing procedures if a taxpayer is about to suffer or is suffering a significant hardship. And what that means is that this taxpayer advocate system is just that, a supplement to everything else. It is not intended as a substitute for 7426 or any other provision of the code. It's not an alternative to that, as they say in their brief. It is a supplement to that. On the other hand, I mean, it's a supplement, but if the fault of the government itself in the delay, I mean, I'm assuming, I don't know that, but assuming that the delay, the administrative process takes so long, which apparently it did, to go beyond the nine-month period, it seems to me that it's making the process meaningless and is contrary to congressional intent at least to the extent that it's not providing the benefit that it was intended. Well, Your Honor, it isn't meaningless at all because it does provide this supplemental avenue of relief. It is not a manner of exhausting her remedy. She doesn't have to go to the taxpayer advocate in order to file her claim in court. In fact, if you look at the timeline here, the taxpayer advocate closed its case in October of 2012. Now, nine months had not yet run at that time because the notice of levy had been served the previous March. So even after the taxpayer advocate had closed its case, Rothkam could have submitted a timely administrative claim to the IRS for return of the levy fund. She had another two months to do it, and she didn't do it. She just didn't take that step. She didn't need to if it was suspended, though, did she? Well, again, we don't have the correspondence between her and the taxpayer advocate service, but she's never alleged that the taxpayer advocate told her, oh, it's suspended, it's told, you don't have to worry about it. She did this on her own. She came up with this idea on her own, a very novel application, that runs contrary to the regulations. So it's really she had a misperception of the law in waiting. We don't have any other reason why she would have waited after the taxpayer advocate had told her they weren't going to give her any relief. I mean, your position would be the same if they hadn't reached a decision before the nine months. Your position wouldn't be any different. If they had made—I'm sorry. If the tax advocate had not rendered a decision until after the nine months ran, your position would be identical. Our position would be identical, Your Honor, but in this case she did have that opportunity. Well, it just so happened. If it's suspended, it's suspended. If it's not, it's not. Well, I could only point back to the statute itself and the structure of the statutory system here in that the taxpayer assistance order being something that only affects the government, and that's why the government gets the benefit of those tolling cards. Do you have any case that addresses this problem? Your Honor, as far as we know, there's been no third-party claimant to have raised this before, so no. Counsel for Rothkamp did mention the Dennis case from the Federal Claims Court, and that does support our position. Technically, that is dicta, but it's fairly straightforward in the way it's set out. They say this provision does not go to the tolling of the statute of limitations in court, but simply confers the IRS with discretion to effect tolling upon a taxpayer's request. So plaintiffs, therefore, cannot sue in court for a refund under that provision. That was a refund case, not a wrongful levy case, but the same principle applies here. You're not saying it's discretionary with the government for the IRS to suspend it for the taxpayer or not? No, Your Honor. It's a function of the statute, and the IRS has interpreted that and those regulations are valid under Chevron. And I think that the clearest example of that is when you compare the tolling provision that does apply with the one that we say doesn't apply. They're done in completely different ways. If Congress had really wanted to make this second tolling provision apply, they could have mentioned a wrongful levy suit. They could have made a reference to 7426. They could have done a cross-reference, but they didn't. And I don't know why we should read those terms in. What would they need to cross-reference it for? Well, they would need to cross-reference it to indicate that this tolling provision 7811 applies to a wrongful levy claim by the taxpayer because everything else in 7811B are actions by the Secretary or by the taxpayer. 81 is to release property of the taxpayer or levy it upon. I mean, what more would you need to make this apply to a taxpayer who wants to release his property? I think you would have to reference an action by the taxpayer for a wrongful levy under 7426 because that's not what exists in the statute as it is now, and that's not the way the IRS has read it for almost 30 years. And in fact, if you look at these regulations even more clearly, I think it indicates that this provision does not apply because the regulations give out examples of how the statute of limitations can be tolled under 7811. In every single example, it's the limitations period on collection or assessment. These are limitations periods that apply to the government because the government is the one who would be forbearing in this case. The government would not have to go after the taxpayer if there was a request for a taxpayer assistance order pending. Congress obviously wanted the government to be able to forbear there, and that's why they have the tolling provisions. Congress didn't intend for the taxpayer to use this as some sort of substitute for relief under 7426. I don't often hear somebody describe the Internal Revenue Code as crystal clear. No, Your Honor, it's not often clear, but I think we have to read it as best we can. The legislative history here is not dispositive, but it does indicate support for our position. This is 1988 USCAN 5275. The conference report says that any applicable statute of limitations, such as the statute of limitations under 6501, relating to the assessment or collection of tax, is suspended starting on the date the taxpayer files an application for a taxpayer assistance order. So in other words, the example they came up with in the legislative history was the periods that apply to the government, the government actions. It doesn't make any reference to any other action or any action by the taxpayer. So you have the conferees in the conference report and the IRS and the district judge all coming to the same conclusion and no taxpayer ever trying to say otherwise all this time. And I think this very novel approach to the statute is one that should bear very close scrutiny under those terms, and we ask that the case be affirmed. Thank you. Thank you, Mr. Sherman. Mr. McDermott, you've saved some time for rebuttal. Thank you. It was mentioned by Judge Higginbotham regarding the taxpayer filing an application cannot hold up the government. But the taxpayer advocate is a division of the Internal Revenue Service, and the regulations governing the actions of the taxpayer advocate are subject to regulations that could be by the Treasury. And so the government's in control of this process from start to end. If this presents a problem to the government, they just simply have to write in their procedures with respect to how the taxpayer advocate accepts and responds to an application. And the government has opportunity to protect itself in that manner through its own administration of its own division. But to say that the suspension of the statute of limitations or periods of limitations works only in favor of the government ignores the fact that there is substantial harm being done to the taxpayer, and the taxpayer is incurring additional harm at each stage that the taxpayer has to go through. You're saying that the taxpayer assistance provisions do not in any way contain advices to the taxpayer that this does not extend the period of time which you may sue? Are you saying that's not what's out there in the regulations? There's nothing in the regulation addressing the suspension of the limitations. And your taxpayer wasn't told that. I found that hard to believe. And then with respect to the regulations and reliance on examples, three examples cannot be all-inclusive of the application of this provision. The examples given actually work only to tell you how to count the days when you're calculating suspension. It could work for the taxpayer, suspension regarding the taxpayer, or with respect to actions taken by the government. The examples demonstrate how to count the days in the suspension, and there's nothing to infer from the regulations that these are the only examples that can apply. What about the substance of the regulation that counsel quoted? What do you say to that? Well, to the extent that it would attempt to override what is clearly in the statute, then I think that the regulation goes too far, because if the statute itself provides for the suspension of limitations, the government by its own, the IRS by its regulations, or actually Treasury, cannot modify that. So you can read what is in the regulation. The regulation does not specifically request. Your argument is step one, Chevron, it's clear, so you don't go further. Sir? In terms of deference to be given to the administrative determination, you say that this is so plainly clear that you don't go further. That's where you have to go, I'm saying. The period of limitation suspension is clear in the statute, and the attempt in the regulations to limit it to only one actor. That's a friendly question, but you have to maintain and carry the burden that this is so clear that you do not get to administrative interpretation. I understand your argument. I'm not trying to distract from it. Do you think the regulation necessarily addresses the tolling situation? The regulation pretty much tracks the statutory provision and does not expressly say that it's limited to actions by the government or by the taxpayer. It doesn't address that at all. So that is not stated in the regulation. And the examples, you can't infer from the examples that they are, that simply because the government chose examples using actions by the government, that it's limited to actions by the government simply because of the examples the government gave. Okay. Thank you. Yes, sir. Thank you, Mr. McGarvey.